CR 22-293 JNE/DTS

UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA

| | |
|---|---|
| UNITED STATES OF AMERICA, | **INDICTMENT** |
| Plaintiff, | 18 U.S.C. § 371 |
| | 18 U.S.C. § 1343 |
| v. | 18 U.S.C. § 1956(h) |
| MOHAMED MUSE NOOR, also known as "Deeq Darajo," | |
| Defendants. | |

THE UNITED STATES GRAND JURY CHARGES THAT:

At times relevant to the indictment:

## **INTRODUCTION**

**A.     Background on the Federal Child Nutrition Program**

1.     The Food and Nutrition Service is an agency of the United States Department of Agriculture (USDA) that administers various federal child nutrition programs, including the Summer Food Service Program and Child and Adult Care Food Program (together, the "Federal Child Nutrition Program").

2.     The Summer Food Service Program is a federal program established to ensure that children continue to receive nutritious meals when school is not in session. The Summer Food Service Program reimburses non-profit organizations and other participating entities that serve free healthy meals and snacks to children and teens in low-income areas.

3.     The Child and Adult Care Food Program is a federal program that reimburses non-profit organizations and other participating entities that serve



SCANNED
OCT 25 2022
U.S. DISTRICT COURT MPLS

healthy meals and snacks to children and adults at participating child care centers, day care homes, and after-school programs.

4. The Federal Child Nutrition Program operates throughout the United States. The USDA's Food and Nutrition Service administers the programs at the national and regional levels by distributing federal funds to state governments, which provide oversight over the Federal Child Nutrition Program.

5. The Minnesota Department of Education (MDE) administers the Federal Child Nutrition Program in Minnesota.

6. Meals funded by the Federal Child Nutrition Program are served by "sites." Each site participating in the Federal Child Nutrition Program must be sponsored by a sponsoring organization that is authorized to participate in the Federal Child Nutrition Program. Sponsors are required to submit an application to MDE for each site. Sponsors are responsible for monitoring each of their sites and preparing reimbursement claims for their sites.

7. Sponsors submit reimbursement claims to MDE on behalf of sites under their sponsorship. The USDA then provides federal reimbursement funds on a per-meal basis. MDE provides the federal funds to the sponsoring agency, which in turn pays the reimbursements to the sites under its sponsorship. The sponsoring agency retains 10 to 15 percent of the funds as an administrative fee in exchange for sponsoring the sites, submitting reimbursement claims, and disbursing the federal funds.

8. Historically, the Federal Child Nutrition Program has generally functioned by providing meals to children involved in educational-based programs or

activities. During the Covid-19 pandemic, however, the USDA waived some of the standard requirements for participation in the Federal Child Nutrition Program. Among other things, the USDA allowed for-profit restaurants to participate in the program. The USDA also allowed for off-site food distribution to children outside of educational programs. At the same time, the state government's stay-at-home order and telework policies made it difficult to oversee the program. These changes left the program vulnerable to fraud and abuse.

### B. Feeding Our Future

9. Feeding Our Future was a non-profit organization purportedly in the business of helping community partners participate in the Federal Child Nutrition Program. Aimee Bock was the founder and executive director of Feeding Our Future.

10. Prior to the onset of the Covid-19 pandemic, Feeding Our Future was a small non-profit that sponsored the participation of daycares and after-school programs in the Federal Child Nutrition Program.

11. Beginning in approximately April 2020, Feeding Our Future dramatically increased the number of sites under its sponsorship as well as the amount of Federal Child Nutrition Program funds received by those sites. Feeding Our Future went from receiving and disbursing approximately $3.4 million in federal funds to sites under its sponsorship in 2019 to approximately $200 million in 2021.

12. Bock oversaw a massive scheme to defraud carried out by sites under the sponsorship of Feeding Our Future. Bock and Feeding Our Future sponsored entities that submitted fraudulent reimbursement claims and fake documentation. Bock and her company sponsored the opening of nearly 200 Federal Child Nutrition

Program sites despite knowing that the sites intended to and did submit fraudulent claims.

13. In exchange for sponsoring the sites' fraudulent participation in the program, Feeding Our Future received nearly $18 million in Federal Child Nutrition Program funds as administrative fees in 2021. Because the amount of administrative fees it received was based on the amount of federal funds received by sites under its sponsorship, Feeding Our Future received tens of millions of dollars in administrative fees to which it was not entitled due to its sponsorship and facilitation of sites fraudulently participating in the program.

14. In addition to receiving tens of millions in administrative fees, Feeding Our Future employees also solicited and received bribes and kickbacks from individuals and sites under the sponsorship of Feeding Our Future. In effect, Feeding Our Future operated a pay-to-play scheme in which individuals seeking to operate fraudulent sites under the sponsorship of Feeding Our Future had to kick back a portion of their fraudulent proceeds to Feeding Our Future employees. Many of these kickbacks were paid in cash or disguised as "consulting fees" paid to shell companies created by Feeding Our Future employees to conceal the true nature of the payments and make them look legitimate.

15. Abdikerm Eidleh was a Feeding Our Future employee who solicited and received bribes and kickbacks from individuals and companies involved in the Federal Child Nutrition Program under the sponsorship of Feeding Our Future. Eidleh created and used several entities to receive and conceal bribe and kickback payments,

including Bridge Consulting and Logistics LLC, Hope Suppliers LLC, and Bridge Logistics LLC.

### C. The Defendant and His Role

16. Defendant MOHAMED MUSE NOOR was the president and owner of Xogmaal Media Group, a Minneapolis-based non-profit company that ran an online news outlet focused on the Somali community in Minnesota. Xogmaal Media Group was enrolled as a Federal Child Nutrition Program site under the sponsorship of Feeding Our Future.

### Count 1
(Conspiracy To Commit Wire Fraud)

17. From in or about November 2020 through in or about 2022, the defendant,

MOHAMED MUSE NOOR,
also known as "Deeq Darajo,"

conspired with Abdikerm Eidleh, and others known and unknown to the grand jury, to devise a scheme and artifice to defraud and to obtain money by materially false and fraudulent pretenses, representations, and promises, and for the purpose of executing such scheme and artifice, transmitted and caused to be transmitted writings, signs, signals, pictures, and sounds by means of wire, radio and television communication in interstate and foreign commerce, in violation of Title 18, United States Code, Sections 371 and 1343.

### Object and Purpose of the Conspiracy

18. The object and purpose of the conspiracy was to carry out a fraudulent scheme to obtain Federal Child Nutrition Program funds by submitting fraudulent

5

claims that the defendant and his company were serving meals to hundreds or thousands of children a day.

## Manner and Means of the Conspiracy

19. The conspirators used the following manner and means, among others, to accomplish the objects and purpose of the conspiracy:

    a. MOHAMED MUSE NOOR enrolled Xogmaal Media Group in the Federal Child Nutrition Program under the sponsorship of Feeding Our Future. NOOR claimed that the site would be located in Minneapolis.

    b. NOOR claimed—falsely—that Xogmaal Media Group was serving meals to as many as 1,500 children every day, seven days a week. NOOR submitted, or caused to be submitted, fake meal counts that he signed as the site supervisor. NOOR also submitted fake invoices purporting to document the purchase of food to be served at the Xogmaal Media Group site.

    c. NOOR claimed—falsely—to have served approximately 580,000 meals to children at the Xogmaal Media Group site between in or about February and June 2021. Based on these fraudulent claims, NOOR and his co-conspirators claimed that Xogmaal Media Group was entitled to more than $1.3 million in Federal Child Nutrition Program funds. Ultimately, Xogmaal Media Group received nearly $500,000 in Federal Child Nutrition Program funds between June and August 2021.

    d. NOOR paid nearly 80 percent of these funds over to entities controlled by Abdikerm Eidleh. The memo lines of the checks written to Eidleh's companies falsely indicated that the payments were for "supplies" and to repay loans.

In reality, the money was transferred to Eidleh's companies in order to misappropriate and launder the proceeds of the fraud scheme.

## Acts in Furtherance of the Conspiracy

20. In furtherance of the conspiracy and to effect its unlawful objectives, the defendant and his co-conspirators committed and caused to be committed the following overt acts, among others, in the State and District of Minnesota, and elsewhere:

21. On or about November 25, 2020, NOOR registered Xogmaal Media Group with the Minnesota Secretary of State.

22. On or about November 29, 2020, NOOR opened a bank account in the name of Xogmaal Media Group at JPMorgan Chase Bank. NOOR was the lone signatory on the account.

23. On or about December 29, 2020, NOOR and Aimee Bock submitted an application to enroll Xogmaal Media Group as a site in the Federal Child Nutrition Program under the sponsorship of Feeding Our Future.

24. On or about February 14, 2021, NOOR submitted or caused to be submitted to Feeding Our Future a meal count form claiming that the Xogmaal Media Group site served supper and a snack to 1,000 children a day, every day, from February 8 through 14, 2021.

25. In or about May 2021, NOOR submitted or caused to be submitted to Feeding Our Future meal count forms claiming that the Xogmaal Media Group site served supper and a snack to 1,500 children a day, seven days a week, in May 2021.

26. On or about June 11, 2021, NOOR submitted or caused to be submitted to Feeding Our Future a meal count form claiming that the Xogmaal Media Group site served meals to 1,500 children a day during the week of June 6, 2021.

27. On or about July 9, 2021, NOOR deposited a $330,770 check from Feeding Our Future into the Xogmaal Media Group bank account.

28. On or about July 20, 2021, NOOR wrote a check for $183,000 from Xogmaal Media Group to Bridge Consulting and Logistics LLC, a shell company creaed and used by Eidleh to receive and launder kickbacks and fraudulently obtained Federal Child Nutrition Program funds. The memo line indicated—falsely—that the payment was for "April, May, June Supplies + Loan."

29. That same day—July 20, 2021—NOOR wrote a check for $79,558 from Xogmaal Media Group to Hope Suppliers LLC, another entity created and used by Eidleh to receive and conceal his share of the fraud proceeds. The memo line on the check falsely indicated that the payment was for "April + May Supplies + Delivery."

30. On or about July 20, 2021, NOOR wrote a check for $39,869 from Xogmaal Media Group to Eidleh Inc., another entity created and used by Eidleh to receive and launder fraud proceeds.

All in violation of Title 18, United States Code, Section 371.

### Counts 2-4
(Wire Fraud)

31. Paragraphs 1 through 30 are incorporated herein.

32. From at least in or about November 2020 through in or about 2022, in the State and District of Minnesota, and elsewhere, the defendant MOHAMED MUSE NOOR, and others known and unknown to the grand jury, did knowingly devise and

participate in a scheme and artifice to defraud and to obtain money by means of materially false and fraudulent pretenses, representations, and promises, and by concealment of material facts.

33. On or about the dates listed below, in the State and District of Minnesota and elsewhere, the defendant MOHAMED MUSE NOOR, for the purpose of executing the scheme described above, knowingly caused to be transmitted by means of a wire communication in interstate commerce, certain writings, signs, signals, and sounds, including the following:

| Count | Date (on or about) | Wire Details |
|---|---|---|
| 2 | December 30, 2020 | An email from Aimee Bock to MDE with the subject line "Site ID Request – Xogmaal Media Group" that passed through servers located outside the state of Minnesota |
| 3 | June 17, 2021 | An email from MOHAMED MUSE NOOR to Feeding Our Future with the subject line "Xogmaal Media Group Food Claim" that passed through servers located outside the state of Minnesota |
| 4 | July 14, 2021 | A wire transfer processing the deposit of a $330,770 check from Feeding Our Future into an account held by Xogmaal Media Group at JPMorgan Chase Bank |

All in violation of Title 18, United States Code, Section 1343.

**Counts 5**
(Conspiracy to Commit Money Laundering)

34. Paragraphs 1 through 32 are incorporated herein.

35. From at least in or about December 2020 through in or about 2022, in the State and District of Minnesota, the defendant,

MOHAMED MUSE NOOR,
also known as "Deeq Darajo,"

conspired with Abdikerm Eidleh, and others known and unknown to the Grand Jury to conduct and attempt to conduct financial transactions, namely, checks, knowing

that the property involved in such transactions represented the proceeds of unlawful activity and which, in fact, involved the proceeds of specified unlawful activity, that is, wire fraud, in violation of Title 18, United States Code, Section 1343, and knowing those transactions were designed, in whole and in part, to conceal and disguise the nature, location, source, ownership, and control of the proceeds of specific unlawful activity, in violation of Title 18, United States Code, Section 1956(a)(1)(B)(i).

## Purpose and Object of the Conspiracy

36. The purpose and object of the conspiracy was to conceal, hide, and launder the proceeds of the fraudulent scheme to obtain Federal Child Nutrition Program funds.

## Manner and Means of the Conspiracy

37. The conspirators used the following manner and means, among others, to accomplish the objects and purpose of the conspiracy:

   a. Abdikerm Eidleh created several limited liability companies for use in hiding the source and ownership of proceeds of the fraudulent scheme to obtain Federal Child Nutrition Program funds.

   b. After receiving Federal Chilld Nutrition Program funds from Feeding Our Future, defendant MOHAMED MUSE NOOR wrote checks to Eidleh's entities. In order to make the payments appear legitimate, NOOR indicated falsely on the memo line of the checks that the money was for the purchase of "supplies" or for a loan. In reality, these payments represented the proceeds of the fraud scheme.

   c. After laundering the proceeds of their scheme through their respective shell companies, the defendants repeatedly used their shell companies to

purchase real estate, cars, and other items for the personal benefit of themselves and others.

All in violation of Title 18, United States Code, Section 1956(h).

## FORFEITURE ALLEGATIONS

38.  Counts 1 through 5 of this Indictment are incorporated by reference for the purpose of alleging forfeiture pursuant to Title 18, United States Code, Section 981(a)(1)(C) in conjunction with Title 28, United States Code, Section 2461(c), and pursuant to Title 18, United States Code, Section 982(a)(1).

39.  If convicted of any of Counts 1-4 of this Indictment, the defendant shall forfeit to the United States, pursuant to Title 18, United States Code, Section 981(a)(1)(C) and Title 28, United States Code, Section 2461(c), any property, real or personal, which constitutes or is derived from proceeds traceable to Counts 1-5 of the Indictment.

40.  If convicted of any of Count 5 of this Indictment, the defendant shall also forfeit to the United States, pursuant to Title 18, United States Code, Section 982(a)(1), any property, real or personal, involved in a transaction or attempted transaction in violation of 18 U.S.C. § 1956 and any property traceable to such property.

41. If any of the above-described forfeitable property is unavailable for forfeiture, the United States intends to seek the forfeiture of substitute property as provided for in Title 21, United States Code, Section 853(p) as incorporated by Title 18, United States Code, Section 982(b)(1) and Title 28, United States Code, Section 2461(c).

A TRUE BILL

_____    _____
UNITED STATES ATTORNEY          FOREPERSON