UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA
Criminal No. 22-293 (NEB/DTS)

UNITED STATES OF AMERICA,

Plaintiff,

v.

MOHAMED MUSE NOOR,
   also known as "Deeq Darajo,"

Defendant.

**PLEA AGREEMENT AND
SENTENCING STIPULATIONS**

The United States of America and defendant MOHAMED MUSE NOOR (hereinafter referred to as the "defendant") agree to resolve this case on the terms and conditions that follow. This plea agreement binds only the defendant and the United States Attorney's Office for the District of Minnesota (hereinafter the "United States" or the "Government"). This agreement does not bind any other United States Attorney's Office or any other federal or state agency.

1.    **Charges**. The defendant agrees to plead guilty to Count One of the Indictment, which charges the defendant with conspiracy to commit wire fraud, in violation of 18 U.S.C. § 371. The defendant fully understands the nature and elements of the crimes with which he has been charged.  At the time of sentencing, the Government agrees to move to dismiss the remaining counts of the Indictment against the defendant.

2.    **Factual Basis**. The defendant is pleading guilty because he is in fact guilty of Count One of the Indictment. In pleading guilty, the defendant admits the

1

following facts and that those facts establish his guilt beyond a reasonable doubt and constitute relevant conduct pursuant to the United States Sentencing Guidelines:

At times between November 2020 and January 2022, the defendant knowingly and willfully conspired with others to participate in a fraudulent scheme to obtain and misappropriate federal child nutrition program funds. Specifically, sites associated with Noor fraudulently obtained up to $1.3 million in federal child nutrition program funds by falsely claiming to have served meals to thousands of children per day. Noor transferred almost all of his fraudulently obtained funds to a Feeding Our Future employee, Abdikerm Eidleh.

Because of the defendant's status as a media provider, Eidleh recruited the defendant to participate in the Federal Child Nutrition Program, even though he had no background or experience in buying or providing food. As a result of Feeding Our Future's recruitment efforts, the defendant agreed to enroll his company, Xogmaal Media Group, in December 2020 in the Federal Child Nutrition Program. The defendant submitted his application through Eidleh to Aimee Bock.

At the direction of Eidleh, the defendant signed forms, including fake meal counts and fabricated invoices falsely claiming to be feeding a supper and snack to 1,500 children every day within a few weeks of being sponsored by Feeding Our Future. The defendant did not personally serve any meals to children and never visited the sites registered in his name. Instead, the defendant acquiesced to Eidleh's directives, even though the defendant knew that the reimbursement claims were false.

As part of this fraudulent conspiracy, the defendant paid kickbacks to Abdikerm Eidleh in exchange for Feeding Our Future's sponsorship of the defendant's participation in the Federal Child Nutrition Program. At Eidleh's direction, the defendant disguised his payments to Eidleh by falsely indicating they were for loans or supplies. The defendant complied with these directives knowing that there was no proper reason to label the payments to Eidleh as loans or for supplies.

In all, sites associated with the defendant obtained approximately $1.3 million in Federal Child Nutrition Program funds as part of the fraudulent conspiracy, almost all of which was either transferred to Abdikerm Eidleh in compliance with Eidleh's specific directions or was intercepted by Eidleh without the defendant's knowledge. As part of his agreement to advance the fraudulent conspiracy, the defendant retained approximately $52,388 in fraudulent proceeds for himself.

3. **Waiver of Pretrial Motions.** The defendant understands and agrees that he has certain rights to file pre-trial motions in this case. As part of the plea agreement, and based upon concessions of the United States within this plea agreement, the defendant knowingly, willingly, and voluntarily gives up the right to file any pre-trial motions in this case. The defendant agrees that, by pleading guilty, he is withdrawing any motions previously filed.

4. **Waiver of Constitutional Trial Rights.** The defendant understands that he has the right to go to trial. At trial, the defendant would be presumed innocent, have the right to trial by jury or, with the consent of the United States and of the Court, to trial by the Court, the right to the assistance of counsel, the right to confront and cross-examine adverse witnesses, the right to subpoena witnesses to

testify for the defense, the right to testify and present evidence, and the right to be protected from compelled self-incrimination. The defendant understands that he has the right to an attorney at every stage of these proceedings and, if necessary, one will be appointed to represent him. The defendant understands that he has the right to persist in a plea of not guilty and, if he does so, he would have the right to a public and speedy trial. By pleading guilty, the defendant knowingly, willingly, and voluntarily waives each of these trial rights, except the right to counsel. The defendant understands that a guilty plea is a complete and final admission of guilt and, if the Court accepts the guilty plea, the Court will adjudge the defendant guilty without a trial.

5.    **Additional Consequences**. The defendant understands that as a result of his conviction, he could experience additional consequences, such as the loss of the right to carry firearms, the right to vote, and the right to hold public office. The defendant has discussed with his attorney the punishments and consequences of pleading guilty, understands that not all of the consequences can be predicted or foreseen, and still wants to plead guilty in this case.

6.    **Statutory Penalties**. The defendant understands that Count One of the Indictment (conspiracy to commit wire fraud, in violation of 18 U.S.C. § 371) is a felony offense that carries the following statutory penalties:

a.    a maximum of 5 years in prison;

b.    a supervised release term of not more than 3 years;

c.    a maximum fine of $250,000, or twice the gross gain or loss caused by the offense, whichever is greatest;

  d.  restitution as agreed to by the parties in this agreement; and

  e.  a mandatory special assessment of $100.

7.  **Guidelines Calculations**. The parties acknowledge that the defendant will be sentenced in accordance with 18 U.S.C. § 3551, *et seq.* Nothing in this plea agreement should be construed to limit the parties from presenting any and all relevant evidence to the Court at sentencing. The parties also acknowledge that the Court will consider the United States Sentencing Guidelines in determining the appropriate sentence and stipulate to the following guidelines calculations. The parties stipulate to the following guidelines calculations:

  a.  Base Offense Level. The parties agree that the base offense level is **6**. U.S.S.G. § 2B1.1(a)(1).

  b.  Specific Offense Characteristics. The parties agree that a **14-level** enhancement applies pursuant to Guidelines § 2B1.1(b)(1)(H) because the loss was more than $550,000 but not more than $1.5 million. The parties agree that the offense level should be increased by **2** levels because the offense involved conduct described in 18 U.S.C. § 1040 (Fraud in Connection with a Major Disaster or Emergency Benefits). The parties agree that no other specific offense adjustments apply.

  c.  Chapter 3 Adjustments. The parties agree that the defendant's offense level is decreased by **2** levels because he was a minor participant in the criminal activity described above. The parties agree that no other Chapter 3 adjustments apply.

  d.  Acceptance of Responsibility. The government agrees to recommend that the defendant receive a **2-level** reduction for acceptance of responsibility pursuant to U.S.S.G. § 3E1.1(a). As the defendant has timely notified the government of her intention to enter a plea of guilty, the government agrees to recommend that the defendant receive an additional 1-level reduction pursuant to U.S.S.G. § 3E1.1(b). Whether these reductions will be imposed shall be determined by the Court in its discretion. However, the defendant understands and agrees that the government's recommendations are conditioned upon the

following: (1) the defendant testifies truthfully during the change of plea and sentencing hearings; (2) the defendant provides full, complete and truthful information to the United States Probation Office in the pre-sentence investigation; and (3) the defendant engages in no conduct inconsistent with acceptance of responsibility before the time of sentencing, including frivolously denying facts in the Presentence Report. Nothing in this agreement limits the right of the government, pursuant to U.S.S.G. § 3E1.1 and/or § 3C1.1 to seek denial of a reduction for acceptance of responsibility or an enhancement for obstruction of justice should the defendant engage in any conduct inconsistent with acceptance of responsibility, including moving to withdraw her guilty plea after it is entered.

e.  Criminal History Category. The parties believe that, at the time of sentencing, the defendant will fall into Criminal History Category I. U.S.S.G. § 4A1.1. This does not constitute a stipulation, but a belief based on an assessment of the information currently known. The defendant's actual criminal history and related status will be determined by the Court based on the information presented in the Presentence Report and by the parties at the time of sentencing. The defendant understands that if the presentence investigation reveals any prior adult or juvenile sentence which should be included within her criminal history under the U.S. Sentencing Guidelines, the defendant will be sentenced based on her true criminal history category, and he will not be permitted to withdraw from this Plea Agreement. U.S.S.G. § 4A1.1.

f.  Zero-Point Offender Adjustment. Because the defendant has zero criminal-history points and no disqualifying conduct, the parties agree the defendant qualifies for a 2-level adjustment under U.S.S.G. § 4C1.1.

g.  Guidelines Range. If the adjusted offense level is **15**, and the criminal history category is I, the Sentencing Guidelines range is **18 -24** months of imprisonment.

h.  Fine Range. If the adjusted offense level is **15**, the Sentencing Guidelines fine range is **$7,500** to **$75,000**. U.S.S.G. § 5E1.2(c)(3).

8.  **Discretion of the Court**. The foregoing stipulations are binding on the parties, but do not bind the Probation Office or the Court. The parties understand

6

that the Sentencing Guidelines are advisory and their application is a matter that falls solely within the Court's discretion. The Court will make its own determination regarding the applicable Guidelines factors and the applicable criminal history category. The Court may also depart from the applicable Guidelines range. If the Court or the Probation Office determines that the applicable guideline calculations or the defendant's criminal history category is different from that stated above, the parties may not withdraw from this agreement, and the defendant will be sentenced pursuant to the Court's determinations.

9.      **Agreements as to Sentencing Recommendation**. The parties are free to recommend whatever sentence they deem appropriate. The parties reserve the right to make a motion for departures from the applicable Guidelines range pursuant to 18 U.S.C. § 3553(a), to oppose any such motion made by the opposing party, and to argue for a sentence outside the applicable Guidelines range.  If the Court does not accept the sentencing recommendation of the parties, the defendant will have no right to withdraw her guilty plea.

10.      **Revocation of Supervised Release.** The defendant understands that if he were to violate any supervised release condition while on supervised release, the Court could revoke her supervised release, and the defendant could be sentenced to an additional term of imprisonment up to the statutory maximum set forth in 18 U.S.C. § 3583(e)(3). *See* U.S.S.G. §§ 7B1.4, 7B1.5.  The defendant also understands that as part of any revocation, the Court may include a requirement that he be placed on an additional term of supervised release after imprisonment, as set forth in 18 U.S.C. § 3583(h).

7

11.    **Special Assessment**. The Guidelines require payment of a special assessment in the amount of $100 for each felony count of which the defendant is convicted, pursuant to Guideline § 5E1.3. The defendant agrees to pay the special assessment prior to sentencing.

12.    **Restitution Agreement**.  The defendant understands and agrees that the Mandatory Victim Restitution Act, 18 U.S.C. § 3663A, applies and that the Court is required to order the defendant to make restitution to the victims of her crimes. The defendant understands and agrees the Court may order the defendant to make restitution to any victim of the scheme regardless of whether the victim was named in the Indictment. The defendant agrees that he owes restitution in the amount of $52,388.

13.    **Disclosure of Assets.** The defendant will fully and completely disclose to the United States Attorney's Office the existence and location of any assets in which the defendant has any right, title, or interest, or over which the defendant exercises control, directly or indirectly, including those assets held by a spouse, nominee or other third party, or any business owned or controlled by the defendant. The defendant agrees to assist the United States in identifying, locating, returning, and transferring assets for use in payment of restitution fines, and forfeiture ordered by the Court. The defendant agrees to complete a financial statement, agrees to execute any releases that may be necessary for the United States to obtain information concerning the defendant's assets, and expressly authorizes the United States to obtain a credit report on the defendant to evaluate his ability to satisfy

financial obligations imposed by the Court. If requested by the United States, the defendant agrees to submit to one or more asset interviews or depositions under oath.

14.    **Forfeiture.** The defendant agrees to forfeit to the United States, pursuant to 18 U.S.C. § 981(a)(1)(C) and 28 U.S.C. § 2461(c), all property, real or personal, which constitutes or is derived from proceeds traceable to Count One of the Indictment.

The defendant consents to the entry of a money judgment forfeiture in the amount of $52,388, which represents the amount of proceeds he received from the wire fraud conspiracy alleged in Count One of the Indictment.  The United States reserves the right to seek the forfeiture of substitute assets and of any directly forfeitable assets.

15.    **Waivers of Appeal and Collateral Attack**. The parties hereby waive the right to appeal any non-jurisdictional issues. This appeal waiver includes, but is not limited to:  the defendant's waiver of the right to appeal guilt or innocence, any issues relating to the negotiation, taking or acceptance of the guilty plea, the sentence imposed or any issues that relate to the calculation of the Guidelines range, the supervised-release term and conditions imposed, any restitution obligations, and the constitutionality of the statutes to which the defendant is pleading guilty.  The parties agree, however, that excluded from this waiver is an appeal by defendant of the substantive reasonableness of a term of imprisonment above the top of the Guidelines range, and an appeal by the government of the substantive reasonableness of a term of imprisonment below the bottom of the Guidelines range.

9

The defendant also waives the right to petition under 28 U.S.C. § 2255 except based upon a claim of ineffective assistance of counsel.

The defendant also waives the right to collaterally attack his conviction and sentence under 28 U.S.C. § 2255 except based upon a claim of ineffective assistance of counsel. This collateral-review waiver does not operate to waive a collateral challenge under 28 U.S.C. § 2255 based on new legal principles enunciated in Supreme Court case law decided after the date of this Plea Agreement that are both substantive and have retroactive effect. For purposes of this provision, legal principles that are substantive and retroactive are those that narrow the reach of the offense of conviction and render the defendant's conduct non-criminal or that render the sentence imposed illegal.

The defendant has discussed these rights with the defendant's attorney. The defendant understands the rights being waived, and the defendant waives these rights knowingly, intelligently, and voluntarily.

16.    **FOIA Requests.** The defendant waives all rights to obtain, directly or through others, information about the investigation and prosecution of this case under the Freedom of Information Act and the Privacy Act of 1974, 5 U.S.C. §§ 552 and 552A.

17.    **Complete Agreement**. This, along with any agreement signed by the parties before entry of plea, is the entire agreement and understanding between the United States and the defendant. By signing this plea agreement, the defendant acknowledges: (a) that the defendant has read the entire agreement and has reviewed every part of it with the defendant's counsel; (b) that the defendant fully understands

10

this plea agreement; (c) that no promises, agreements, understandings, or conditions have been made or entered into in connection with his decision to plead guilty, except those set forth in this plea agreement; (d) that the defendant is satisfied with the legal services and representation provided by defense counsel in connection with this plea agreement and matters related to it; (e) that the defendant has entered into this plea agreement freely, voluntarily, and knowingly; and (f) that the defendant's decision to plead guilty in accord with the terms and conditions of this plea agreement is made of the defendant's own free will.

LISA D. KIRKPATRICK
Acting United States Attorney

Date: _____January 30, 2025_____

BY: JOSEPH H. THOMPSON
MATTHEW S. EBERT
HARRY M. JACOBS
Assistant United States Attorneys

Date: 01-30-2025

MOHAMED MUSE NOOR
Defendant

Date: 1/30/2025

JASON STECK
Counsel for Defendant

11